UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| *In re:*<br><br>CITY VIEW LAND DEVELOPMENT, LLC,<br><br>Debtor. | Case Number: 21-10531-12<br>(Jointly Administered) |
| *In re*:<br><br>BRUCE ALLEN KLUG<br>and MARY LOU KLUG,<br><br>Debtors. | Case Number: 21-10532-12 |

## **MEMORANDUM DECISION**

Bruce and Mary Klug and City View Land Development, LLC ("Debtors") each filed Chapter 12 petitions in March 2021. In June they filed a Joint Chapter 12 Plan of Reorganization ("Plan") which provides for 8 classes of claims. At issue is the proposed treatment of the Class 8 Allowed Unsecured Creditors ("Class 8 Creditors"). The matter before the Court is whether the Debtors may convert unsecured claims into secured claims for the purpose of plan treatment.

Marathon Feed and Grain, LLC ("Marathon Feed"), a member of the Class 8 Creditor class, objects to the conversion under the proposed Plan. It also raises other objections to the treatment of the Class 8 Creditors. The Standing

Chapter 12 Trustee ("Chapter 12 Trustee") also objects to the proposed Plan on various grounds.

## FACTUAL BACKGROUND

The Debtors are dairy farmers. For several years prepetition, they relied on unsecured credit to operate their farm but could not keep up with all required payments. There is thus a significant dollar amount of allowed unsecured claims.

Debtors filed a liquidation analysis showing the values of the Debtors' assets, liens, and anything left after payment of any secured or priority claims. The liquidation analysis shows sufficient value in farm assets to provide payment in full on every allowed claim in a hypothetical chapter 7 bankruptcy. Thus, the Debtors' Plan must provide for full payment of each allowed unsecured claim to meet the best interests of creditors test under Chapter 12 of the Bankruptcy Code. *See* 11 U.S.C. § 1225(a)(4). This provision requires that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date." *Id.*

But the farm's cash flow is insufficient to afford and complete regular payments during the 36-month term of the Plan, violating the feasibility requirement for Chapter 12 plans. 11 U.S.C. § 1225(a)(6). This section requires that, under a Chapter 12 plan, "the debtor will be able to make all payments under the plan and to comply with the plan." *Id.* As a result, the Debtors seek

2

to extend the payments to the Class 8 Creditors beyond the 36-month plan term. By doing so, Debtors assert they could pay these claims in full, meeting both the best interests of creditors test and the feasibility requirements for a Chapter 12 plan. It would also preserve value for the Debtors.

To accomplish this, the Plan proposes that 30 days after the conclusion of the 36-month Plan, the Class 8 Creditors will become beneficiaries of a Joint Klug and City View Creditors' Trust ("Trust"). For now, Debtors will begin paying the Trust sufficient funds to distribute monthly payments to the Class 8 Creditors, plus interest at the prime rate as published in the Wall Street Journal on the date of plan confirmation, amortized over 15 years.[1] At the same time the Class 8 Creditors become beneficiaries of the Trust, each creditor would be granted a security interest in the form of a mortgage to secure their claims.

### RELEVANT STATUTES

**11 U.S.C. § 1222(b)(2)**

>  **(b)** Subject to subsections (a) and (c) of this section, the plan may—
>
>> **(2)** modify the rights of holders of secured claims, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

**11 U.S.C. § 1222(b)(9)**

>  **(b)** Subject to subsections (a) and (c) of this section, the plan may—
>
>> **(9)** provide for payment of allowed secured claims consistent with section 1225(a)(5) of this title, over a period exceeding the period permitted under section 1222(c).

---

[1] ECF Nos. 39 & 48, Exh. B at 1-2.

3

**11 U.S.C. § 1222(c)**

> Except as provided in subsections (b)(5) and (b)(9), the plan may not provide for payments over a period that is longer than three years unless the court for cause approves a longer period, but the court may not approve a period that is longer than five years.

### JURISDICTION

The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334(a). Venue is proper under 28 U.S.C. §§ 1408 and 1409. Matters involving administration of the estate and resolution of objections to the Plan are core proceedings. The matters arise directly from the Debtors' bankruptcy and from the Bankruptcy Code.

### DISCUSSION

#### I. Modifying Rights

A Chapter 12 plan may "modify the rights of holders of secured claims, or holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1222(b)(2). The plain language of section 1222(b)(2) does not define or limit the types of modifications that may be made to claimholder rights. Though Seventh Circuit courts have not directly addressed this issue, courts in other jurisdictions have held that the authorization to modify claimholder rights is limited to modifications that comply with the plan confirmation requirements of section 1225. *First Brandon Nat'l Bank v. Kerwin–White*, 109 B.R. 626, 629-30 (D. Vt. 1990) (stating that "[s]ection 1222(b) is a general provision of Chapter 12 which merely states what plans *may* contain; it does not purport to override the specific limitations placed on it in § 1225(a)(5)"). In other words, section 1222(b)(2) permits any

4

modification of claimholder rights if the modification complies with all other Chapter 12 provisions.

Debtors and Marathon Feed agree that section 1222(b)(2) allows a debtor to modify the rights of unsecured creditors. And the parties agree that, in general, a debtor may modify an unsecured creditor's rights by granting an unsecured creditor a security interest. Indeed, there is nothing in Chapter 12 of the Bankruptcy Code that expressly prohibits a debtor from granting a security interest to unsecured creditors. But whether the particularities of the modification here are allowed—such as the timing of when a security interest is granted—requires a consideration of whether the proposed modification as a whole meets the other requirements of Chapter 12.

## II. Extending Payments

Extending payments is addressed in 11 U.S.C. § 1222(c):

> Except as provided in subsections (b)(5) and (b)(9), the plan may not provide for payments over a period that is longer than three years unless the court for cause approves a longer period, but the court may not approve a period that is longer than five years.

According to this provision, payments to claimholders under a Chapter 12 plan generally may not exceed three years. A court may, for cause, approve a payment period beyond three years but no longer than five years. 11 U.S.C. § 1222(c).

Section 1222(c) carves out two exceptions that allow payments to extend beyond this five-year limit. One exception relates to curing defaults under 11 U.S.C. § 1222(b)(5), which is not relevant here. The second exception is found

5

under 11 U.S.C. § 1222(b)(9), which states that a plan may "provide for payment of allowed secured claims consistent with section 1225(a)(5) of this title, over a period exceeding the period permitted under section 1222(c)." In other words, a plan may extend payments to creditors who hold allowed secured claims beyond five years.

The parties agree that courts in the Seventh Circuit have held that section 1222(b)(9) "clearly authorizes" Chapter 12 debtors to provide for payments on secured claims that extend beyond the five-year term of the Plan. *See In re Fortney*, 36 F.3d 701, 706 (7th Cir. 1994) (stating that section 1222(b)(9) "clearly authorizes the bankruptcy court to extend secured debt repayment in certain circumstances"); *see also In re Kline*, 94 B.R. 557, 559 (Bankr. N.D. Ind. 1988) (same); *see also In re Marriott*, 161 B.R. 816, 819 (Bankr. S.D. Ill. 1993) (same).

Debtors argue that because section 1222(b)(2) permits them to modify the rights of the Class 8 Creditors by granting them security interests, this modification would transform the Class 8 Creditors' claims into secured claims. According to Debtors, because the claims are now elevated to "secured status," payments to the Class 8 Creditors may be extended beyond the three-year Plan pursuant to section 1222(b)(9). Debtors assert there is nothing in the Bankruptcy Code that explicitly states whether an unsecured creditor's rights may be modified post-confirmation. As a result, because Debtors can modify the Class 8 Creditors' rights under section 1222(c), and there is nothing in the Bankruptcy Code that prohibits the post-confirmation modification of rights,

6

Debtors can grant the Class 8 Creditors a security interest and extend payments under the Plan. Debtors also argue this modification is binding because a Chapter 12 plan "ultimately binds the creditors and Debtors, as a confirmed plan constitutes a new arrangement between the debtor and creditors."[2] Thus, it does not matter that the security interest is granted after plan completion because the Class 8 Creditors' treatment will be a wholly enforceable, new agreement.

Marathon Feed, on the other hand, argues that only if the Class 8 Creditors are granted a security interest by plan confirmation can Debtors avail themselves of section 1222(b)(9). Otherwise, if the Class 8 Creditors do not become secured creditors as of the date of confirmation, they remain unsecured during the duration of the Plan and thus section 1222(b)(9) does not apply. Marathon Feed supports this position by noting that in prior cases in which a debtor has been allowed to extend Chapter 12 plan payments to creditors, these creditors have been secured as of plan confirmation. *See e.g.*, *In re Novak*, 103 B.R. 403, 410 (Bankr. E.D.N.Y 1989). Even so, Marathon Feed does not point to anything in the Bankruptcy Code or any case law that suggests the creditors *must* be secured by plan confirmation.

Debtors are correct in that there is nothing in Chapter 12 of the Bankruptcy Code that explicitly prohibits post-confirmation modification of rights. But section 1222(b)(9) does limit the extension of payments to *allowed secured claims*. So, for section 1222(b)(9) to apply, the security interests

---

[2] ECF Nos. 56 and 75 at 5.

7

granted to the Class 8 Creditors must result in those creditors holding "allowed secured claims."

The allowance of claims and interests is governed by section 502 of the Bankruptcy Code. According to section 502, barring an objection, a claim or interest is "deemed allowed" if it "is filed under section 501 of this title." 11 U.S.C. § 502(a). Section 501 requires that a creditor file a proof of claim. *See* 11 U.S.C. § 501.

Further, section 506 of the Bankruptcy Code governs allowed secured claims. It states, in relevant part:

> (a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property.

Thus, a creditor holds an allowed secured claim if that creditor holds (1) an allowed claim that is (2) secured by a lien (3) in property of the estate.

For section 1222(b)(9) to apply, then, the Debtors' modification of the Class 8 Creditors' rights must turn them into allowed secured claims. In other words, the modification of the Class 8 Creditors' rights must result in the creditors holding (1) an allowed claim that is (2) secured by a lien (3) in property of the estate.

The first element is whether the creditors have allowed claims. Proofs of claims were filed and there were no objections. Thus, the claims are allowed under section 502 of the Code. This element is satisfied.

The second element is that the claims must be secured by a lien. Under the Plan, the Class 8 Creditors' claims would be secured by a lien, but the lien

8

would only arise 30 days after the Plan is completed. Thus what the Trust proposes is a promise to grant a security interest at a later time, rather than to actually grant a security interest at Plan confirmation. A promise to grant a lien is not the same as actually granting a lien. Such promise is not sufficient to create a recordable, validly perfected, and enforceable security interest. So a promise to grant a lien at a later time does not make a creditor secured at the time the promise is made.

Marathon Feed argues that deferring the granting of the security interest creates an unacceptable risk for those creditors. It points to the possibility that the Debtors could voluntarily dismiss their cases within the three years, leaving Class 8 unsecured and with no likelihood of payment.

Debtors respond that the Trust would continue to exist because it is created by the Plan. The flaw in this position is that while a trust may have been created, under the Plan as drafted it would have no assets until after the completion of the Plan. If the Debtors dismissed their case before completion of the three-year Plan, it would be an entity without assets other than a promise that *if* the Debtors completed all payments through the Chapter 12 Trustee *then* Debtors would make payments to the Trust for the benefit of the Class 8 Creditors. The Trust would distribute those funds pro rata. If the case was dismissed before completion of the payments through the Chapter 12 Trustee, there would be no mortgage to the Trust nor any payments.

Even if the Trust Agreement was a separate, enforceable agreement, following a dismissal it would leave Class 8 unsecured. There might be a claim

9

to pursue a security interest in the real estate, but whether that would succeed or what value might exist for Class 8 at a point in the future is unknown. And this would not change the fact that at confirmation Class 8 would be unsecured because it would not hold a security interest at confirmation. Thus this element is not satisfied.

Finally, the liens must be in property of the estate. Section 541 of the Bankruptcy Code defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Upon plan confirmation, however, all property of the estate revests in the debtor. This revesting is supported by section 1227 of the Bankruptcy Code, which states that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1227(b). It is also supported by the Debtors' Plan itself, which states that "[p]roperty of the estate shall revest in the Debtors at such time as this Plan is confirmed or the case is dismissed."[3]

Here, the terms of the Plan and Trust make it clear the mortgages granted to the Class 8 Creditors arise not only post-confirmation, but post-completion of the Plan. The Plan explicitly states, "At the conclusion of the 36-month term of this plan, . . . the allowed Unsecured Claims shall become secured by a mortgage upon all of the farm real estate of both Bruce and Mary

---

[3] ECF Nos. 39 and 48 at 7.

10

Klug and of City View Land Development, LLC."[4] So when the liens arise post-confirmation, after the property of the estate has revested in the Debtors, the liens will be secured by property of the Debtors, not property of the estate.

Because an "allowed secured claim" requires that the lien be in property of the estate, though, the modification of the Class 8 Creditors' rights does not transform their claims into allowed secured claims. Since they cannot be classified as allowed secured claims, the proposed treatment does not meet the requirements of section 1222(b)(9), and Debtors may not rely on section 1222(b)(9) to extend plan payments to the Class 8 Creditors beyond the plan term. As a result, the Class 8 Creditors must be paid during the three-year plan term or any extension to a five-year term.

Alternatively, if the Class 8 Creditors are to be granted security interests, the security interests must be granted by the time of plan confirmation, before property of the estate has revested in the Debtors. Doing so ensures that the liens arise in property of the estate, placing it within the scope of section 1222(b)(9).

### III. Other Issues

#### A. Interest Rates

Debtors propose using the prime rate as published in the Wall Street Journal on the date of plan confirmation. Both Marathon Feed and the Chapter 12 Trustee raise brief objections to this rate. This is currently at 3.25 percent. Marathon Feed objects because it says many of the unsecured creditors,

---

[4] *Id.* at 5.

including itself, initially had higher interest rates. The Chapter 12 Trustee says a future interest rate should not be based on the current prime rate.

These objections are premature. As decided above, the delay in the grant of a mortgage until after confirmation renders the Plan unconfirmable. As a result, there is no need to address this passing objection now. Further, evidence and argument would be required to determine the appropriate interest rate considering applicable factors under the caselaw. Further negotiation between the parties on the issue or an evidentiary hearing would be required to resolve this question.

    B.  <u>Trustee Nomination</u>

Marathon Feed also objects to the Trust's failure to nominate a trustee. This objection assumes the Debtors would serve as the trustee. Debtors respond that Debtors intentionally omitted naming a trustee to permit the creditors to nominate one. This issue is not ripe for decision. If modifications are made to the Plan to create a security interest in property of the estate held by a trust for the benefit of Class 8, the Court will consider any arguments related to the appropriate trustee. If the parties cannot agree, the Debtor may propose a trustee and, if objections are filed, the Court will determine whether the proposed trustee is suitable.

C. <u>Feasibility, Best Interests, and Tax Issues</u>

The Chapter 12 Trustee also raises several other objections in its brief. The Chapter 12 Trustee:

- Asserts that Debtors have shown no ability to make plan payments during the first three years of the Plan, let alone for another fifteen years.

- Argues that Debtors have not shown why liquidation of unneeded property now is not in the best interests of creditors and Debtors.

- Questions whether paying unsecured claims in full with interest is actually "better/preferable" to being paid some amount during the plan term.

- Questions whether it is appropriate for the Class 8 Creditors to be designated as the grantors and owners of the Trust.

These objections are not relevant for the purpose of this decision.

It is true that any modification of a claimholder's rights must comply with all other Chapter 12 provisions. This includes section 1225(a)(6), which requires that a debtor be able to make all payments under the Plan. The Chapter 12 Trustee's concerns about the feasibility of the Plan exist whether or not the proposed treatment of the Class 8 Creditors' claims is allowed. So, the issue of Debtors' ability to make plan payments is more appropriately addressed during a plan confirmation hearing if the Plan is amended.

The Chapter 12 Trustee does not define what constitutes Debtors' "unneeded property." Without knowing whether any property is unneeded, there is no reason to doubt that the property *is* needed. And this issue goes towards determining whether the property is reasonably necessary for reorganization, rather than the question of the Debtors' ability to modify the Class 8 Creditors' rights and extend payments.

What may be "preferable" timing of payment is also irrelevant to the current analysis. First, simply because the Chapter 12 Trustee or a creditor may prefer certain treatment does not mean a creditor is entitled to that treatment. Second, the purpose of the current decision is not to determine whether the suggested modifications are the "better" or "preferable" arrangement, but simply whether the proposed treatment of the Class 8 Creditors' claims complies with the Bankruptcy Code.

The core of the last of the Chapter 12 Trustee's objections concerns whether naming the Class 8 Creditors as grantors would create tax issues or disputes in the future. This issue has not been addressed by any other party. If no trust is created, then it is unnecessary to decide this issue now. If modifications to the Plan are made to resolve the issue of an interest in property of the estate as discussed above, then modifications to address the passing objections may also be made. Further argument and evidence would be needed about this objection.

**CONCLUSION**

After due consideration, this Court finds that the Debtors' proposed treatment of the Class 8 Creditors violates 11 U.S.C. § 1222(c) and 1222(b)(9). By waiting to grant security interests to the Class 8 Creditors until after the Plan is completed, Debtors propose granting security interests in property that will have revested in the Debtors. This would preclude the Class 8 Creditors from being classified as allowed secured claims, because allowed secured claims must be secured by property in which the estate has an interest. As payments would be impermissibly extended beyond the plan term to creditors who do not hold allowed secured claims, payment to Class 8 cannot be extended beyond a three-year term. The plain language of section 1222(b)(9) does not permit such treatment. For that reason, unless the Class 8 Creditors' treatment is modified to grant a security interest in property of the estate as of the time of confirmation to allow the Debtors to avail themselves of section 1222(b)(9), the Class 8 Creditors must be paid within the three-year Plan.[5]

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

---

[5] Or any extension to five years that might be permitted.

A separate order consistent with this decision will be entered.

Dated: December 23, 2021

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge